## SHEARER vs. LOFTIN ET AL.

1. When a creditor files a bill in equity against his debtor under the act of 1846, giving an attachment in chancery in certain cases, the jurisdiction of the court is not limited to the condemnation of the property seized under the attachment: if its jurisdiction has once rightfully attached, the court may render it effectual to the complainant's relief, by sending out its process, upon a proper application, or widening the sphere of its action, so as to embrace and subject property enough to satisfy his demand.

2. A deed of trust which conveys property absolutely for the benefit of specified creditors, although it purports on its face to be tripartite, does not require to be signed by either the trustee or the beneficiaries to give it effect.

3. But if the trustee is only authorized to sell the property "at the request of the beneficiaries, or a majority of them in interest," and the deed reserves to the grantor the right of redeeming the property by a specified day, beyond the maturity of the greater part of the secured debts, the assent of the beneficiaries cannot be presumed, and nothing short of the express assent of a majority in interest can render the deed available.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. J. W. LESESNE.

THE original bill in this case was filed in October, 1850, by W. W. Shearer, the appellant, against Albert G. Loftin, Henry R. Thornton, George B. Saunders, Alfred B. Deloach,

Samuel K. Bradford, and Thomas A. Johnson. It alleges, in substance, that said Loftin is indebted to complainant individually, and as surviving partner of the late firm of Lake & Shearer, in several specified sums due by promissory notes and bills of exchange, amounting in all to $2,338 84; that said Loftin has absconded, and continues to reside beyond the limits of this State; that he "has an equity in certain real and personal property in this State," consisting of lands, slaves, and other personal property, which are particularly described in the bill, and are alleged to have been conveyed by said Loftin to said Thornton, as trustee, by deed dated February 8, 1848, to secure to said Bradford a debt of nearly $9,000 falling due in four annual installments; that on May 5, 1849, said Loftin executed another deed of trust, by which he conveyed four other slaves to said Johnson, as trustee, to secure said Deloach and one M. D. Moore; that the trustee, by virtue of the power of sale conferred on him by this last deed, sold three of the slaves thereby conveyed, the proceeds of which were more than sufficient to pay off the secured debts; that the residue of the proceeds of sale, and also the slave unsold, were given up by the trustee to said Saunders, and by the latter to Deloach; that Deloach has also taken possession of the plantation, negroes, and other property conveyed as aforesaid to said Thornton, as trustee, and is applying the profits, &c., to his own use; and complainant insists, that the said slave and sum of money received by Deloach from Saunders are justly subject to his debt, and that Deloach is responsible for the rents and profits of the lands and negroes in his possession. The prayer of the bill is, for an attachment in chancery to be levied upon the property, estate, and effects of the said Loftin; that said property and equitable interests of said Loftin be condemned to satisfy complainant's debt; for an account, &c.

An attachment was issued by a circuit judge, pursuant to the prayer of the bill, and was levied by the sheriff on the land, negroes, and other property described in the bill, in the possession of said Deloach and Saunders.

Deloach answered the bill, admitting that he had the possession of the land and negroes conveyed to said Thornton, and stating that he received them under a contract to pay

rent and hire during the pendency of a detinue suit brought by said Thornton, as trustee, against the sheriff, who had levied executions on them as the property of Loftin ; and as to the slave and sum of money received by him from Saunders, as charged in the bill, he alleges that he has a right to them, as the preferred beneficiary in a deed of trust executed by Loftin to secure him and others ; that this deed conveys all of Loftin's property, and that it will be insufficient to pay all the debts provided for ; that Loftin was insolvent when it was made, and that it is such a general assignment as the court will uphold for the benefit of the secured creditors.

The deed thus set up by Deloach, dated April 17, 1850, purports to be made between said Loftin of the first part, said Saunders (trustee) of the second part, and said Alfred B. Deloach, Reuben Thom, James Duren, Charles B. Gibbs, James Tiller, W. W. Shearer, and Lake & Shearer of the third part. The debts which it provides for are, 1st, a bill of exchange for $510, past due, on which said Deloach is accommodation acceptor ; 2d, a promissory note for $500 to one Thomas H. Hawkins, past due, on which said Deloach and Thom are sureties ; 3d, a promissory note for $700 to one Lewis May, past due, on which Duren, Thom and Gibbs are sureties ; 4th, a promissory note for $503 to the administrator of Joseph Knight, deceased, due the 20th October, 1850, on which Thom and Duren are sureties ; 5th, a bill of exchange for $640 to one W. E. Williamson, past due, on which Duren is surety ; 6th, a note for $125 to one Moses F. Hoit, due the 1st January, 1851, on which Duren is surety ; 7th, a bill of exchange for $2,500 to A. E. & W. J. Ledyard, due the 7th January, 1851, on which Duren is surety ; 8th, a debt of $180 due to said Gibbs by open account ; 9th, two promissory notes to said Tiller, amounting to $950, both past due ; 10th, a bill of exchange for $350 to said Shearer, past due ; and, 11th, two promissory notes to Lake & Shearer, amounting to about $1,700, both past due. The property which it conveys may be thus described: First, an undivided moiety in the Planters' Hotel in Livingston, together with all the household and kitchen furniture ; 2d, "all his resulting interest in certain lands (715 acres) and negroes (17 in number) heretofore conveyed by deed of trust to James T. Hill";

45

3d, his resulting interest in certain slaves (7 in number) previously conveyed by deed of trust to Gideon B. Frierson; 4th, his resulting interest in the slaves previously conveyed to said Johnson; and, 5th, his stock of cattle, hogs, &c., the growing crop on his plantation, household and kitchen furniture, &c. The trusts specified in the deed are as follows:

"Upon trust nevertheless, and with the express understanding and agreement, that in case the said Loftin shall fully pay off, satisfy and discharge the said bills of exchange, promissory notes, and open accounts, and in the order in which they are enumerated above, (i. e. the bill of exchange for $510, and the promissory note for $500, are first to be paid; then the note for $700; then the note for $503; then the bill of exchange for $640; then the note for $125; then the bill for $2,500; then the open account for $180; then the notes due Tiller; then the bill of exchange to Shearer; and then the notes to Lake & Shearer,) but in case the said Loftin shall not pay the said bills, notes, and accounts, or either of them, or any part thereof, by the first day of November next, then the said party of the second part shall, at the request of the said parties of the third part, or a majority of them in interest, or their legal representatives, expose to public sale, for cash, before the court-house door in the town of Livingston, on giving twenty days' notice of such sale by posting up an advertisement on said court-house door, all the above-described property, both real and personal, or such portion thereof as shall be sufficient to discharge any liability or liabilities the said parties of the third part may have incurred or paid for the said party of the first part, and also the open account aforesaid, and notes, and bills, including such damages and interest as may have accrued at the time of such sale, and shall apply the proceeds thereof as is above directed. And it is hereby expressly agreed between the parties to this indenture, that the said trustee is to take and retain possession of all the aforesaid property, and to manage and control the same in manner best calculated to protect the interests of the beneficiaries aforesaid; and it is further agreed between the parties to this indenture, that in case of the death, removal, resignation, refusal to act, or other cause whereby the said party of the second part shall become unable or incom-

petent to carry out the provisions of this deed, then the said parties of the third part, or a majority of them in interest, or their legal representatives, shall have power to appoint, by written instrument, some other fit and proper person as trustee, who shall thereby be vested with all the rights, powers, and privileges hereby vested in said party of the second part."

This deed was signed by said Loftin and said Deloach.

An amended bill was subsequently filed, which alleges, that this deed of trust to Saunders "was procured to be made at the sole solicitation and request of said Deloach; that it was executed between midnight and day on the day of its execution, and was executed by said Loftin, Saunders and Deloach alone; that the said deed is fraudulent and void, and was made by said Loftin to hinder and delay complainant and other creditors of said Loftin, and ought not to be suffered to stand in the way of complainant's claims; that at the time complainant's bill in this case was filed, none of the creditors provided for in said deed of trust, except said Deloach and Thom, had assented to the same, but, on the contrary, several of them (especially Duren, Gibbs and complainant) had refused to assent; that whether said deed is valid or not, said Loftin has a valuable interest in the same, and in the profits, trusts, and uses therein, which is subject to complainant's claim."

All the creditors provided for in this deed of trust are made defendants to the amended bill. Gibbs, Thom, Deloach, and Duren filed answers, and a decree *pro confesso* was taken against Tiller. Gibbs does not allege that he assented to the deed, but says that "he never intimated to any one a refusal to receive all the benefit accruing to him under said trust deed, to which he may be legally and equitably entitled."— Thom alleges, that before the filing of the bill "he expressed to said Loftin his assent to all the provisions of said deed, and has ever since relied on it as his only security or indemnity against his liabilities for said Loftin." Duren alleges, "that he heard of the execution of the deed a day or two after it was made, and of Loftin's failure, and has never since looked to any other security for his protection, and has constantly looked to it; that he did not know or suppose, and does not now, that it was necessary he should do more than

acquiesce in the deed ; that he spoke of it, and recognized it as security, before complainant's bill was filed, and looked to it solely, and still insists on it for his benefit."

In his final decree the chancellor says, "It is admitted that the property sought to be subjected by the bill is not sufficient to pay the debts having priority to the complainant's; and it is consented by the complainant, that if the court should be of opinion that the deed of trust to Saunders is valid, and should so decree, then the bill should be dismissed ; reserving, however, to the complainant the right of appeal to the Supreme Court." The chancellor held the deed valid, and the bill was accordingly dismissed.

The decree of the chancellor is here assigned for error ; and there is an agreement of record, signed by the counsel of both parties, that the paragraph above quoted from the opinion shall be considered as forming no part of it or the transcript, and that the reversal shall be at the costs of the appellant, unless the decree is reversed on some other ground.

TURNER REAVIS, for the appellant:

The appellant insists, 1st, that the deed is invalid for the want of the assent of all the beneficiaries ; 2d, that it should have been set aside, because, a majority in interest of the creditors provided for not having assented to it, it could not be executed ; 3d, that if valid as to those who assented, it is invalid as to those who did not assent, and as to them should have been set aside, and the trust funds remaining after payment of the claims of those who assented should have been subjected to the appellant's demand ; and, 4th, that an account should have been ordered at all events.

1. It seems evident from the deed, that the grantor intended that the assent of the beneficiaries should be manifested by their signing it. This is shown by these circumstances : 1st, it purports to be tripartite ; 2d, it was signed by Deloach at the time it was made ; 3d, it could not be executed at all, until a majority in interest (not a numerical majority) should assent to it. If such be the proper construction of the deed, it could not become valid against an attaching creditor, until the beneficiaries actually signed it.—5 Cond. Eng. Ch. R. 1 ;

3 Sim. 1 ; 17 Ala. 662, citing and approving 3 Sim. 1 ; 10 Ala. 235 ; 2 My. & K. 492 ; 8 Cond. Eng. Ch. 97.

If, however, the deed does not impliedly require that all the parties should signify their assent by signing it, then their assent must be signified to the trustee.—10 Ala. 231, and other authorities cited *supra.* There is nothing in the answers to show that any such assent was given by Tiller, Shearer, Duren, or Gibbs. Assent is necessary to give validity to the deed, 1st, because all the debts except two were past due at the time it was made, and yet delay is stipulated for from that time until the first day of November following ; 2dly, because it stipulates for the right of redemption within that time ; 3dly, because the creditors are placed upon unequal footings, by the provision that the debts shall be paid in the specified order of priority ; 4thly, because the deed could not be executed at all without the assent of a majority in interest, and because it provides for the appointment of another trustee, in a certain event, by a majority in interest ; and, 5thly, because debts which would not be due at the time fixed for closing the deed, are required to be paid before debts which had been long past due,—thus delaying some of the creditors in the collection of their debts, reserving to the debtor time and a right to redeem, and requiring certain acts to be done by the beneficiaries. These provisions bring the deed completely within the decisions of this court which require the assent of all the beneficiaries.—7 Ala. 262 ; *ib.* 138 ; 10 *ib.* 271 ; *ib.* 231 ; 8 *ib.* 9 ; 14 *ib.* 702 ; 15 *ib.* 502 ; 16 *ib.* 294 ; 11 *ib.* 9 ; 17 *ib.* 662 ; 21 *ib.* 333 ; *ib.* 380 ; also, 2 Story's Eq. §§ 1036 a, 1036 b, 1045, 1196§; 4 Russell 1 ; 7 Dana 495.

The deed was made for the fraudulent purpose, on the part of Loftin, of avoiding the payment of the debt to Boykin, McRae & Foster. This is shown by his expressed determination, on the day the deed was made, to avoid the payment of that debt : by his making the deed secretly, at midnight of that day ; by his dictating the terms of the deed, from which that debt is omitted, although Saunders says it was spoken of by him ; and by the fact that an attachment on that debt was in the hands of the sheriff, which accounts for the haste, secrecy, and unusual hour of making the deed. The purpose

of Loftin, being fraudulent, renders express assent necessary, even if assent would be implied in the absence of such purpose.—18 Ala. 301 ; 23 ib. 801.

This deed is a mere deed of trust, and not a general assignment ; for the proof shows, that Loftin owed a large amount of debts for which he made no provision, and had rights, money, bills, and notes which he did not convey ; he did not, therefore, convey all his property, nor include all his debts, both of which are necessary to constitute a general assignment to which the assent of creditors will be presumed. But if it be an assignment, as the deed contains provisions which are not beneficial to all the creditors, the assent of all cannot be presumed.—Cases cited above. If it is a general assignment, it is fraudulent and void, because it does not fix the rights of the creditors, nor devote the property, absolutely and unconditionally, to the payment of the debts ; and because, also, it stipulates for benefits to the grantor. It stipulates, in effect, for time ; it does not include all the grantor's debts ; it restrains the trustee from selling more than enough of the property to pay the particular debts, whereby a resulting trust to the grantor is created ; it provides for the right of the grantor to redeem the property by a specified time ; and it gives a majority in interest the right to require a sale or not, and to fix the time of sale. The rights of the minority, therefore, are not fixed by the deed, but are left to the arbitrary discretion of the majority ; and no matter what the object of this provision was, its effect is the same.—12 Ala. 104 ; 4 ib. 382 ; 1 Sm. & Mar. Ch. 207 ; 6 Hill's (N. Y.) R. 438 ; 4 Barb. S. C. R. 546 ; 1 Sandf. Ch. R. 43 ; 2 Comst. 365 ; Burrill on Assignments, pp. 209, 212.

2. The appellant and Duren constituted a majority in interest, their debts amounting to a great deal more than half of the whole amount provided for. They having dissented from the deed, it cannot be executed ; and because it cannot be executed, it is invalid, even if the assent of a majority in interest would have rendered it valid. Nor can it be executed under the direction of a numerical majority ; for, if Deloach, Thom, and Gibbs assented, Shearer, Duren and Tiller did not, and consequently there is no majority. The deed, therefore, should have been set aside on this ground.

3 and 4. The third and fourth points seem self-evident.

ROBT. H. SMITH, *contra:*

In Elmes v. Sutherland, 7 Ala. R. 243, the question was, whether the assent of creditors would be presumed to a deed of trust for them which postponed the payment of debts past due to a period designated in the deed, the grantor not being insolvent ; and the court held not, but that the assent of all the creditors was necessary under its provisions ; citing Story's Eq. § 972 ; 10 Pick. 408 ; 3 Metc. 139 ; 3 B. & A. 31 ; 3 Sim. 1 ; 17 Mass. 454. See, also, Lockhart v. Wyatt, 10 Ala. 231 ; Hodge v. Wyatt & Houston, *ib.* 271.

Smith v. Leavitts, 10 Ala. 103, was an assignment (and a suspicious one, too) by an insolvent, providing first for preferred creditors, and secondly for such as should come in, release, &c.; and giving power to the trustees, at their election, to sell for cash or on credit : *Held,* that the assent of preferred creditors would be presumed, and if any preferred creditor should refuse to assent, that the deed would be good for the others. In that case, the power to sell on credit was a postponement of the payment of the debts out of the trust funds, but not a postponement of the day of payment of the debts : the creditor could in the meantime sue on his debt, just as if the deed had not been made. See this illustrated in 14 Ala. 702. In Elmes v. Sutherland, *supra,* an extension of the debt is provided for—a new day of payment.

Kinnard v. Thompson, 12 Ala. 489, was very similar, in some respects, to the deed now under consideration. The deed was to secure (first) Rhodes, who was a surety, and (secondly) creditors whose debts were past due ; it could only be closed after a crop had been made ; it could only be closed on request of a majority of the creditors ; and one of the secured creditors dissented, and levied. In all these respects, the case is the same as the one at bar ; and further, it did not appear that any but the preferred creditor accepted, nor (except inferentially from the deed) that the grantor was insolvent. The point was made in argument, that the assent of the creditors would not be presumed, and that the deed was a mere power ; but the court repudiated the English and Massachusetts cases as to the assent of creditors, and held

that their assent would be implied, and the deed be good for all who did not dissent. The case at bar, in several particulars, is stronger : here the deed conveys the possession to the trustee absolutely ; while there the grantor retained it to make a crop for his own benefit, subject to be divested only if the trustee (or the preferred creditor) should think it to the interest of beneficiaries : as against the other creditors, he held the possession without their power to prevent it.

The law, then, may be thus stated : If the debtor make a trust deed, and attach new conditions to his debts which are onerous to all the creditors, or requires all of them, in order to take under the deed, to do anything that impairs their debts, their assent will not be presumed, and the deed is a mere power ; and if such is the effect as to a part only, the assent of that part will not be presumed, but that of the others will. But a deed which leaves the creditor free to resort to all his legal remedies for his debt, and provides additional security, no matter how that security is clogged with other conditions not illegal or fraudulent, is for his benefit, and his assent will be presumed.

If the case in hand is rested on the broad ground (sometimes assumed by the *dictum* in 16 Ala. 301, but shown to be indefensible by Mauldin v. Armistead and Kinnard v. Thompson) " that the deed is revocable until the creditors assent, if it provides that they shall do or omit anything whatever," in order to take under it ; yet this deed requires nothing whatever to be done, to enable the creditors to take. The sale is to be made on instructions from a majority ; and this, at most, is something to be done to perfect the sale, but not to take under the deed. Besides, this is for the benefit of the creditors, by making them, *pro tanto*, their own trustees, and so far protecting them against the wrong or mistake of the trustee. Suppose it had made the creditors trustees, and had given them the power to sell (after a named day) at the discretion of a majority; this certainly would be a favor to them, and the provision in the deed is precisely the same.

But suppose the debts due by Loftin when the deed was made fall under Elmes v. Sutherland and kindred cases ; then it only follows, that the assent of such will not be presumed, but that of the preferred creditors (who had no debts, and

were mere sureties) will be presumed.—Kinnard v. Thompson, and Mauldin v. Armistead, *supra*. The object of the postponement evidently is, to mature the crop, of which the trustee had the possession for the creditors.

Again, Loftin was insolvent, and the assignment was a general one; and all the cases show that assent will be presumed in such case.—See cases collected in Reavis' Dig., p. 60 (d.) The deed not only shows that the sale was to take place at the earliest moment the crop could be gathered, but it was evident that there was a probability that longer than November would be required to gather it; and hence the right to the creditors, or a majority of them, not to have a sale so soon. It shows, also, that other trusts were to be closed before this could be, and without the stipulation for November it could not have been closed even then. There is nothing in the position, that the postponement deprived the creditors of the right to pursue the fund for that time: even if a right were reserved to Loftin for that time, any creditor might subject his interest by bill.—Hopkins v. Scott, 20 Ala. 179, and other cases. But the profits for that time are devoted to the creditors: the crop to be made is conveyed by the deed.—Abercrombie v. Bradford, 16 Ala. 560.

As to fraud in fact: There is no allegation that the beneficiaries participated in any fraud.—7 Ala. R. 142, and cases cited on p. 151; 9 *ib.* 904. The allegation of fraud should specify that Boykin, McRae & Foster were creditors, and were intended to be defrauded; otherwise, the defendant could not know what he was called on to meet. There must be a statement of the facts in which the fraud consists: a general charge of them is not sufficient.—2 Ala. 604; 7 Por. 549. Very little weight is to be attached to Loftin's remarks, under the irritating circumstances under which they were made; and the assertion that he had money is fully disproved. The bill, in fact, negatives the idea of the deed having been made by Loftin to defraud any one: it avers that it was made " at the instance" of Deloach, and of course not on his own suggestion or spontaneous desire. There is no pretence that Saunders, or any of the beneficiaries, knew of any intention to defraud, or even of the existence of Boykin, McRae & Foster's debt.

The bill admits that Deloach and Thom accepted, and only

alleges that Gibbs and Duren did not; while they both say they did accept, and there is only one witness against Duren, and none against Gibbs. The deed, then, is good as to all, even Tiller, who is not shown by the bill not to have assented.

The bill rests entirely on the act of February 5, 1846, giving an attachment in chancery, and independent of that act the court would have no jurisdiction. The prayer of the bill, and the attachment, only relate to the property in the Thornton and Johnson deeds, and the levy is on nothing else. The answers having set up the Saunders deed, the amended bill is filed, not to reach other property, but to get rid of that deed, as to the property already proceeded against: it prays no further attachment, and none was granted, issued, or levied. The complainant, then, is in court only in reference to the property in the two first-named deeds, and cannot enter into a contestation as to any other: he cannot get before the court the title to any other property. This accounts for the fact, that evidence was not taken to show that all the other property in the Saunders deed was subject to judgment and execution liens, which swept it away, and placed it beyond the reach of either Saunders or complainant; and for the further fact, that it is not in any manner noticed in the progress of the suit, not even with reference to its value : for all the purposes of this suit, it was of no value or moment. The proceedings are in derogation of the common law, are invasive of the right of trial by jury, and must be strictly pursued.

CHILTON, C. J.—According to the record, as amended by the agreement of the counsel, if we concede that all the deeds made by Loftin are valid, the complainant is entitled to an account, so as to ascertain the residuum which may remain after satisfying the liens created by those deeds, and for which he should have a decree. We do not think the jurisdiction of the court is limited to the condemnation of the property seized under the writ of attachment; but if its jurisdiction has once rightfully attached, the court may render it effectual to the party's relief, by sending out its process, upon a proper application, or widening the sphere of its action, so as to embrace and subject property enough to satisfy the complainant's demand,

2. We do not concur with the counsel for the appellant, that the deed of 17th April, 1850, from Loftin to Saunders, trustee, should have been signed by all the beneficiaries, to render it valid. Although it purports to be tripartite, and is signed by Deloach, one of the beneficiaries, there is nothing upon the face of it which shows that it was to be inoperative until signed by the other beneficiaries. It cannot be distinguished from many other cases, which have been passed upon by this court, holding that neither the trustee, nor the beneficiaries, are required to sign the deed to give it effect.

3. It is needless, under the view we take of this case, to decide whether it requires the assent of all the beneficiaries to the provisions of this deed, to vest the title in the trustee, and cut off the grantor's right of revocation, for we feel satisfied, that under its peculiar provisions, nothing short of the express assent of a *majority in interest* of the parties provided for, could render the deed available. The trustee has no power to execute the trust by a sale of the property, until directed by such a majority, or by all the beneficiaries.

4. We cannot presume the assent of the beneficiaries to this deed. It postpones debts for which all the beneficiaries are liable, for several months after they fall due. True, it provides for the payment of two demands, for which one of the beneficiaries (Duren) is liable, before they fall due ; yet he is postponed for a large sum, and we cannot presume that it was beneficial to him to be deprived of resorting to this property in satisfaction of demands due when the deed was made, for the provision, more or less contingent, made for the security of those not due. Although the grantor may have embraced all his property in this deed, it is nevertheless, as appears on its face, a deed of trust, reserving to himself the right of redeeming the property by a given time, which right will continue until the trust shall have been executed. That the deed does not postpone the creditor's right to sue on his demand, is not material under the circumstances here presented ; for, practically, there can be but little difference between denying the right to sue, and depriving him of all means of satisfying his judgment in the event his suit should result in one in his favor. Aside, however, from the postponement of the creditors, and reserving the right of redemp-

tion, we could not assume that the provisions in this deed would prove beneficial to any of the parties, taking into consideration that all the property of the grantor is conveyed, with the right of a majority in interest of the beneficiaries to say when it shall be sold. We cannot assume that the property in the deed will pay all the demands mentioned in it, and this litigation is very persuasive to the contrary. Suppose it falls short ; the preferred creditors may say, we will not accept, because, having no power to order a sale, we may be postponed by a *majority in interest* to an indefinite period ; for the interest of those whose claims would be left unsatisfied by a present sale, would prompt them to wait until the appreciation of the property from its natural increase, or rise in value in the market, or the rents and profits of it under the control of the trustee, would make it pay their demands—and thus, for the benefit of a majority in interest, they are made to incur the risk of its depreciation, and compelled to submit to this delay. The majority may say, if we assent, others are preferred before us, and the effects may be exhausted before our claims can be reached ; whereas, by dissenting, the deed cannot be valid, because it provides that a majority in interest shall concur in ordering a sale— thus all the creditors shall be placed upon an equality. Thus it is that no legal presumption of assent can be indulged, because the court cannot see that the provision would be beneficial to a majority.

We would here take occasion to remark, that deeds containing provisions of this character, embracing all the grantor's property, and providing for the right of redeeming on the part of the grantor, may readily be made instruments of fraud on the part of the grantor in delaying and hindering the collection of his debts, by presenting alternatives requiring their acceptance, and making the interest of each so operate upon that of the other as to work very great delay. Had the deed, in this instance, provided that those who should assent to it should take, and should have power to direct the execution of the trust, although a majority in interest should decline accepting, it would have been to the interest of all parties to have accepted, because of this adroit provision that a majority in interest could control the sale. The preferred

minority would accept, because, on their failure, the majority would·take and exhaust the property; and the minority having accepted, the majority must accept, because, if not sufficient to satisfy all the demands, or to reach theirs after satisfying the minority, they can have the property held up and thus avail themselves of the chances of its appreciation as above shown. Thus the grantor obtains all the indulgence he desires, all the while having the right to redeem, and exempting his property thus tied up from liability to his other creditors. Whether such a conveyance can be supported may well be questioned, and we leave it an open question, since the facts of the case before us do not involve it.

Coming next to the facts of the case, we are satisfied they do not show that a majority in interest of the persons provided for assented. Duren and the complainant constitute such a majority, and it is very clear that neither of them had assented before the bill was filed. Duren says, in his answer, that he looked to the deed for indemnity, &c.,—spoke of it publicly, &c.; but he no where says that he notified the trustee of his acceptance.· Indeed, the evidence of Maury clearly shows that he was making preparation to assail the deed by filing a bill after the complainant's bill was filed, and that before that time he had requested said Maury to consult an attorney in his behalf, who did so, and reported the result. We think it clear, from the whole record, that he did not accept by notifying the trustee before Shearer's bill was filed; and this being an affirmative fact, he should have shown it, if it existed. Indeed, his answer assumes that he did not deem such notice essential. But, without it, the trustee does not become his bailee—he is vested with a power subject to revocation, and which is revoked by the attaching creditor who acquires a lien.—See the cases on the brief, especially Lockhart v. Wyatt, 10 Ala. 235.

The deed then of the 17th of April, 1850, of Loftin to Saunders, must be regarded as interposing no obstacle to subjecting the property to the satisfaction of the complainant's demand.

Let the decree be reversed, and the cause remanded, to be proceeded in as above indicated.